

**SO ORDERED,**

**Judge Neil P. Olack**
**United States Bankruptcy Judge**
**Date Signed: April 14, 2021**

**The Order of the Court is set forth below. The docket reflects the date entered.**

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF MISSISSIPPI

**IN RE:**

| | |
|---|---|
| **JESCO CONSTRUCTION CORPORATION, A DELAWARE CORPORATION,** | **CASE NO. 18-52152-NPO** |
| **DEBTOR.** | **CHAPTER 7** |
| **KIMBERLY R. LENTZ, CHAPTER 7 TRUSTEE** | **PLAINTIFF** |
| **VS.** | **ADV. PROC. 20-06007-NPO** |
| **HENRY N. CLARK, EARL A. PAYSON, DANIEL D. BERNSTEIN, AND INTERNAL REVENUE SERVICE** | **DEFENDANTS** |
| **THEODORE CONNOR, III D/B/A WAR-CON CONSTRUCTION COMPANY** | **INTERVENOR** |

## MEMORANDUM OPINION AND ORDER
## GRANTING:  (1) INTERNAL REVENUE SERVICE'S MOTION
## FOR SUMMARY JUDGMENT AND (2) PLAINTIFF'S RESPONSE TO,
## <u>AND JOINDER IN MOTION FOR SUMMARY JUDGMENT FILED BY IRS</u>

This matter came before the Court on the Internal Revenue Service's Motion for Summary

Judgment (the "Motion for Summary Judgment") (Adv. Dkt. 51)[1] filed by the Internal Revenue

---

[1] Citations to the above-referenced adversary proceeding (the "Adversary Proceeding") are "(Adv. Dkt. ___)"; and citations to the above-referenced bankruptcy case (the "Bankruptcy Case") are "(Bankr. Dkt. ___)".

Service (the "IRS"); the Memorandum in Support of the Internal Revenue Service's Motion for Summary Judgment (the "IRS Brief") (Adv. Dkt. 52) filed by the IRS; the Plaintiff's Response to, and Joinder in Motion for Summary Judgment Filed by IRS (the "Joinder") (Adv. Dkt. 56) filed by Kimberly R. Lentz, the chapter 7 trustee (the "Trustee") of the bankruptcy estate of the debtor, JESCO Construction Corporation, A Delaware Corporation[2] (the "Debtor"); the Memorandum in Support of Plaintiff's Response to, and Partial Joinder in Motion for Summary Judgment Filed by IRS (the "Trustee Brief") (Adv. Dkt. 57) filed by the Trustee; the Response in Opposition to [51] Motion for Summary Judgment (the "Connor Response") (Adv. Dkt. 58) filed by Theodore Connor, III, d/b/a War-Con Construction Company ("Connor"); Plaintiff's Reply to Response to Motion for Summary Judgment (DKT 58) (the "Trustee Reply") (Adv. Dkt. 59) filed by the Trustee; and the Reply Brief in Support of IRS's Motion for Summary Judgment (Adv. Dkt. 61) filed by the IRS in the Adversary Proceeding.  Henry N. Clark ("Clark") did not file a response to the Motion for Summary Judgment.

Earl A. Payson and Daniel D. Bernstein, attorneys who represented Clark in other litigation (together, the "Clark Attorneys"), were dismissed from the Adversary Proceeding on December 3, 2020.  (Adv. Dkt. 49).  Accordingly, the alignment of the parties for purposes of the Motion and Joinder is the IRS and the Trustee against Connor and Clark.

Only the Trustee submitted exhibits.  The Trustee attached the Affidavit in Support of Response to and Joinder in Motion for Summary Judgment Filed by IRS (Adv. Dkt. 56-1) to the

---

[2] The name of the Debtor in the petition for relief filed in the Bankruptcy Case is misspelled as "JESCO Construction Corporation, A Delawre Corporation."  (Bankr. Dkt. 1).

Joinder and eleven (11) exhibits to the Trustee Brief, marked as Exhibits "A" through "K"[3] (Adv. Dkt. 57-1 to 57-3).

## Jurisdiction

The Court finds that it has jurisdiction over the parties to and the subject matter of this proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (K) and (O). Notice of the Motion for Summary Judgment and Joinder was proper under the circumstances.

## Facts[4]

In the Adversary Proceeding, the parties dispute the priority of competing claims to the same property. The IRS includes a statement of undisputed facts in the IRS Brief (Adv. Dkt. 52), which the Trustee adopts and supplements in the Trustee Brief (Adv. Dkt. 57). Connor, who opposes the relief sought by the IRS and the Trustee, does not contest any of the facts set forth in the IRS's statement of undisputed facts and disputes only two (2) of the Trustee's supplemental facts. (Adv. Dkt. 58); MISS. BANKR. L.R. 7056-1. The facts are deemed undisputed with respect to Clark because of his failure to file a response. The following facts are undisputed unless otherwise noted.

### A.    Debtor

The Debtor is engaged in the business of disaster cleanup and environmental remediation services. John E. Shavers ("Shavers") organized the Debtor under the law of Delaware in 2006. The Debtor's principal place of business is located in Stone County, Mississippi. (Bankr. Dkt. 1).

_____

[3] Citations to the Trustee's exhibits are to the corresponding docket entry in the Adversary Proceeding.

[4] The following findings of fact and conclusions of law are made pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

Shavers owns other companies engaged in the same business as the Debtor but formed under the laws of different states.

### B.    Clark Litigation Against the Debtor

On July 21, 2010, Clark filed a complaint against the Debtor, Shavers, JESCO, JESCO Construction Company, and JESCO Disaster Services a/k/a JESCO JDS in the U.S. District Court for the Central District of Illinois, Rock Island Division (the "Illinois District Court"), No. 4:10-cv-04053, for breach of an oral contract for payment of commissions (the "Clark Litigation"). (Bankr. Cl. 5-1).  The action arose out of disaster services provided by the Debtor and other related entities to the Village of Gulfport, Illinois and Henderson, Illinois in connection with a flood in 2008.  The Clark Attorneys represented Clark in the Clark Litigation.  (Bankr. Cl. 5-1).  The settlement of the Clark Litigation in 2016 is discussed later in this Opinion.

### C.    Debtor Litigation Against BP

On December 2, 2010, the Debtor filed a complaint in the District Court of Harris County, Texas, No. 2010-78844, against BP America Production Company ("BP") alleging claims for breach of contract, fraud, and negligent misrepresentation related to marine disaster services the Debtor purportedly provided following the *Deepwater Horizon* oil spill[5] (the "BP Litigation"). (Adv. Dkt. 52).  The BP Litigation was removed to the U.S. District Court for the Southern District of Texas, No. 4:10-cv-04964, where it was transferred to the U.S. District Court for the Eastern District of Louisiana (the "Louisiana District Court"), No. 2:11-cv-00911-CJB-JCW.   The Louisiana District Court consolidated the BP Litigation into multidistrict litigation, No. 10-md-

---

[5] "On April 20, 2010, the oil drilling rig *Deepwater Horizon*, operating in the Macondo Prospect in the Gulf of Mexico, exploded and sank resulting in . . . the largest spill of oil in the history of marine oil drilling operations." *Deepwater Horizon — BP Gulf of Mexico Oil Spill*, U.S. ENVIRON. PROTECTION AGENCY, https://www.epa.gov/enforcement/deepwater-horizon-bp-gulf-mexico-oil-spill (last visited Apr. 13, 2021).

2179, and later severed and returned the cause of action to No. 2:11-cv-00911-CJB-JCW.  (Adv. Dkt. 57-3 at 27).  The settlement of the BP Litigation in 2020 is discussed later in this Opinion.

### D.     Connor Litigation Against Debtor

On  November 4, 2011, Connor filed a complaint against the Debtor; Shavers, individually and d/b/a JESCO Disaster Services and JDS Disaster Services; JESCO Construction Corp. (A Mississippi Corporation); JESCO Construction Corporation (A Louisiana Corporation); J5 Global, LLC; and J.D.S. LLC in the U.S. District Court for the Southern District of Mississippi, Southern Division (the "Mississippi District Court").  Connor sought to hold the Debtor and other related defendants liable for a default judgment entered by the General Court of Justice Superior Court Division, Craven County, North Carolina against JESCO Construction Corporation, A Louisiana Corporation on October 9, 2002 in the amount of $1,108,781.80 (the "Connor Litigation").  (Adv. Dkt. 57-1 at 18-21; Adv. Dkt. 57-2 at 2-4).  Connor alleged that the corporate defendants are alter egos formed by Shavers under the laws of different states to escape the debts of their predecessors.

On September 15, 2014, the parties reached a settlement which they memorialized in an agreed judgment (the "Connor Judgment") (Adv. Dkt. 26-1; Adv. Dkt. 57-1 at 18-21) entered by the Mississippi District Court on September 23, 2014.  The Connor Judgment awarded Connor $2,376,888.44, plus interest, but provided that it was not to be "enrolled except in the event of a default."  (Adv. Dkt. 26-1).  A "default" is defined in the Connor Judgment as a failure to pay the settlement amount within thirty (30) days of receiving payment either "from the Henderson County, Illinois claims or from any BP claims."  (Adv. Dkt. 26-1).  The Connor Judgment granted Connor judicial liens for the settlement amount "against the Henderson County and BP matters which are to be the source of the settlement funding."  (Adv. Dkt. 26-1; Adv. Dkt. 57-1 at 18-21). The Connor Judgment also provides that the settlement funds "shall be paid . . . with the highest

present legal priority available, being subordinate only to claims of parties with previously filed valid UCCs[.]" (Adv. Dkt. 26-1). The Connor Judgment was not enrolled in Stone County, Mississippi, the location of the Debtor's principal place of business.[6]

Approximately a month later, the Mississippi District Court entered an order under seal (the "Connor Lien Order") (Adv. Dkt. 26-2; Adv. Dkt. 57-2; Bankr. Cl. 2-2), granting Connor a "judicial and equitable lien" in the amount of $800,000.00 effective as of September 15, 2014 in "any proceeds[,] awards or other funds which may be issued in favor of JESCO Construction Company" in then-pending litigation, including the BP Litigation. (Adv. Dkt. 57-2 at 23). The Connor Lien Order contains a confidentiality provision.[7] The amount of the settlement "shall not be subject to public disclosure . . . except to the parties and their legal representatives who are charged with making the settlement payment pursuant to the judicial lien created by this Order." (Adv. Dkt. 57-2). The Connor Lien Order, however, "authorized and directed [the parties] to file a redacted version of this Order for the public record pursuant to Fed. R. Civ. Pro 5.2(d) pursuant

---

[6] On December 23, 2020, Connor filed a motion asking the Mississippi District Court to enroll the Connor Judgment against all defendants except the Debtor who by then had commenced the Bankruptcy Case. *Connor v. Shavers*, No. 1:11-cv-00421-LG-JCG, Dkt. 108 (S.D. Miss. Dec. 23, 2020). On February 21, 2021, the Mississippi District Court entered an order declining to rule on the motion on the ground that 11 U.S.C. § 362 operated as an automatic stay of the enforcement of any judgment obtained before the commencement of the bankruptcy case. In the same order, the Mississippi District Court extended the automatic stay to include all defendants, not just the Debtor. The order does not mention the Adversary Proceeding and does not contain any language indicating an intention to stay any proceedings before this Court. *See In re Cowin*, 538 B.R. 721, 733 (S.D. Tex. 2015) (recognizing that automatic stay does not prohibit proceedings against a debtor if the proceedings are initiated in the same bankruptcy court where the debtor's bankruptcy case is pending).

[7] An unredacted version of the Connor Lien Order has been attached as an exhibit to pleadings filed in the Adversary Proceeding by Connor (Adv. Dkt. 26-2; Adv. Dkt. 33-2; Bankr. Cl. 2-2) and thereafter by the Trustee (Adv. Dkt. 57-2 at 2-4).

to the confidentiality terms of the settlement agreement." (Adv. Dkt. 57-2; Bankr. Cl. 2-2). There is a factual dispute as to whether this provision authorized Connor to take such action unilaterally.

No version of the Connor Lien Order was enrolled in Stone County, Mississippi. No notice was given to BP, and no financing statement was filed in accordance with Article 9 of the Uniform Commercial Code ("UCC") with the appropriate state office.

### E.    2016 Tax Assessment

On February 8, 2016, the IRS assessed corporate income taxes owed by the Debtor for the tax periods ending December 31, 2010, December 31, 2011, and December 31, 2012 (the "2016 Tax Assessment") (Adv. Dkt. 57-3 at 15-22; Bankr. Cl. 3-1). According to the 2016 Tax Assessment, the Debtor owed the following amounts of corporate income taxes for the associated tax periods:

| Tax Period | Tax Due |
|---|---|
| 12/31/2010 | $463,195.00 |
| 12/31/2011 | $602,357.00 |
| 12/31/2012 | $415,798.00 |
| **Total:** | $1,481,350.00 |

(Adv. Dkt. 57-3 at 20; Bankr. Cl. 3-1).

### F.    Settlement of Clark Litigation

The Debtor obtained the permission of the Illinois District Court to file under seal the Offer of Judgment Pursuant to Federal Rule of Civil Procedure 58 on April 21, 2016, in which the Debtor offered to settle the Clark Litigation for $600,000.00 with post-judgment interest and court costs. (Adv. Dkt. 57-3 at 24-25). On the same day, Clark filed under seal a Notice of Acceptance of Offer of Judgment Pursuant to FRCP 68 accepting the Debtor's "Offer of Judgment . . . in favor

of Henry N. Clark against [the Debtor] for the principal amount, with interest thereon as stated in the Offer of Judgment." (Adv. Dkt. 57-3 at 26). On May 4, 2016, the Illinois District Court entered a Judgment in a Civil Case (the "Clark Judgment") (Bankr. Cl. 5-1 at 37), noting the fact of the settlement, but not disclosing the settlement terms.    The Clark Judgment was never enrolled in Mississippi.

Part of the resolution of the Clark Litigation required the Debtor to execute an assignment for the benefit of Clark and the Clark Attorneys. In the assignment dated April 18, 2016, (the "Clark Assignment") (Adv. Dkt. 57-3 at 13), the Debtor agreed to "[a]ssign, transfer, convey, and set over (and also grant[] a security interest therein)" to Clark and the Clark Attorneys "all of its right, title, and interest in and to the net proceeds up to the amount of" $600,000.00 that it derives from the BP Litigation, plus interest at a rate of 0.65% per annum until paid in full. (Adv. Dkt. 57-3 at 13). The Clark Assignment defines "net proceeds" as "the sums and proceeds that [the Debtor] shall receive and be entitled to receive, after payment of reasonable attorneys' fees, costs, and expenses and court costs" in the BP Litigation. (Adv. Dkt. 57-3 at 27). The Clark Assignment also provides that it "is intended to and shall take precedence and priority over all other claims from any person or source against the first $600,000.00, plus interest thereon as herein provided that is or becomes available to [the Debtor] from the pending BP [L]itigation." (Adv. Dkt. 57-3 at 27). No UCC financing statement was filed with the appropriate state office. On August 5, 2016, however, the Clark Attorneys intervened in the BP Litigation to notify the parties of the Clark Judgment and the Clark Assignment. (Bankr. Cl. 5-1).

**G.      Notice of Federal Tax Lien**

On June 13, 2016, the IRS filed a Notice of Federal Tax Lien (the "Notice of Federal Tax Lien") with the Chancery Clerk of Harrison County, Mississippi and the Mississippi Secretary of State.  (Bankr. Cl. 3-1; Adv. Dkt. 1 at 17-18); *see* 26 U.S.C. § 6323(f)(2)(B).

**H.      Bankruptcy Case**

During the pendency of the BP Litigation, the Debtor filed a voluntary petition for relief (the "Petition") (Bankr. Dkt. 1) under chapter 7 of the U.S. Bankruptcy Code on November 5, 2018.  That same day, the Debtor filed the schedules, statements, and other documents required by Rule 1007(c) of the Federal Rules of Bankruptcy Procedure.  (Bankr. Dkt. 3).  On the Summary of Assets and Liabilities for Non-Individuals, the Debtor listed liabilities of $30,000.00 in priority unsecured claims and $13,739,869.77 in nonpriority unsecured claims.  (Bankr. Dkt. 3 at 2).  On Schedule E/F: Creditors Who Have Unsecured Claims (Bankr. Dkt. 3 at 8-10), the Debtor listed a priority unsecured claim in the amount of $30,000.00 belonging to the IRS; a contingent, unliquidated, and disputed nonpriority unsecured claim in an unknown amount belonging to Clark; and a disputed nonpriority unsecured claim in the amount of $1,200,000.00 belonging to Connor. The Debtor did not disclose any assets of known value but did schedule the BP Litigation as an asset of unknown value.

**1.      Competing Proofs of Claim**

Connor, the IRS, the Clark Attorneys, and Clark asserted first priority liens on the BP Proceeds in competing proofs of claims filed in the Bankruptcy Case.  Each proof of claim is discussed separately below.  Amendments to the proofs of claim filed by Clark and Connor are discussed later in this Opinion.

### a.   Connor POC

Connor filed a proof of claim (the "Connor POC") (Bankr. Cl. 2-1), asserting a nonpriority unsecured claim in the amount of $2,376,888.44.  (Adv. Dkt. 57-2 at 6-13; Bankr. Cl. 2-1).  The Connor POC provides that the basis for the claim is "Goods sold."  (Adv. Dkt. 57-2 at 7; Bankr. Cl. 2-1).  Attached to the Connor POC is the Connor Judgment entered in the Connor Litigation on September 23, 2014 but not the Connor Lien Order docketed under seal.

### b.   IRS POC

The IRS filed a proof of claim (the "IRS POC") (Adv. Dkt. 57-3 at 15-22; Bankr. Cl. 3-1) in the amount of $2,878,443.11 secured by "all property and rights to property, whether real or personal," pursuant to 26 U.S.C. § 6321.  The IRS POC includes a Form 410: Attachment (the "Form 410") that provides the same information included in the 2016 Tax Assessment:  corporate income taxes owed in the amount of $1,481,350.00 for the tax years 2010 through 2012 with prepetition penalties in the amount of $733,469.09 and prepetition interest accrued in the amount of $663,624.02, for a total claim in the amount of $2,878,443.11.  (Bankr. Cl. 3-1).  The IRS attached to the IRS POC the Notice of Federal Tax Lien filed with the Chancery Clerk of Harrison County, Mississippi and the Mississippi Secretary of State on June 13, 2016.  (Bankr. Cl. 3-1; Adv. Dkt. 1 at 18).

### c.   Attorneys POC

The Clark Attorneys filed a proof of claim (the "Attorneys POC") (Bank. Cl. 5-1) in the amount of $600,000.00.  The Clark Attorneys assert that their claim is secured by a lien on property as a result of the Clark Litigation and the Clark Assignment.  (Bankr. Cl. 5-1).

      **d.**     **Clark POC**

Clark filed a proof of claim (the "Clark POC") (Bankr. Cl. 8-1) asserting an unsecured claim in the amount of $750,000.00 including accrued interest. Clark cited the Clark Judgment as the basis for the Clark POC, but he did not indicate that his claim was secured or that it was related to the claim of the Clark Attorneys.

**I.**     **Settlement of BP Litigation**

After participating in mediation with BP on February 5, 2020, the Trustee reached a settlement of the BP Litigation for $600,000.00, subject to the Court's approval. (Adv. Dkt. 57-1 at 14). On February 20, 2020, the Trustee filed the Motion to Approve Settlement and Compromise of BP Claim and to Approve §506(c) Surcharge (the "Motion to Approve Settlement") (Bankr. Dkt. 18) in the Bankruptcy Case asking the Court to approve the settlement. (Bankr. Dkt. 18 at 2-3). No objection to the Motion to Approve Settlement was filed. On March 17, 2020, the Court entered the Order Approving Settlement (Bankr. Dkt. 22) resulting in a payment to the bankruptcy estate of $600,000.00 (the "BP Proceeds") on May 11, 2020 (Adv. Dkt. 57-1 at 12-15).

**J.**     **Adversary Proceeding**

In anticipation of the Court granting the Motion to Approve Settlement, the Trustee on March 3, 2020 filed the Complaint to Determine Validity, Extent and Priority of Liens and to Avoid Unperfected Security Interest (the "Complaint") (Adv. Dkt. 1) against Clark, the Clark Attorneys, and the IRS to determine the validity and priority of the competing claims to the BP Proceeds. The Trustee alleges in the Complaint that the BP Litigation became part of the bankruptcy estate on the date the Petition was filed pursuant to 11 U.S.C. § 541(a). (Adv. Dkt. 1 at 5-6). The Trustee proposes the following analysis and treatment of the competing claims: First,

she asserts that the Clark Attorneys do not hold a claim against the Debtor inasmuch as their claim for attorneys' fees is based solely on a contract entered into with Clark and, therefore, no debt is owed by the Debtor (Adv. Dkt. 1 at 7); second, she contends that any security interest granted Clark and the Clark Attorneys by virtue of the Clark Assignment was not perfected before the Petition was filed and is avoidable pursuant to 11 U.S.C. § 544 (Adv. Dkt. 1 at 7); third, she maintains that the claims of the Clark Attorneys and Clark, to the extent they are allowable under 11 U.S.C. § 502, are unsecured (Adv. Dkt. 1 at 7); and fourth, she asserts that the IRS holds a first priority lien and security interest in the BP Proceeds (Adv. Dkt. 1 at 7).

On April 23, 2020, the IRS filed the Internal Revenue Service's Answer to Complaint to Determine Validity, Extent and Priority of Liens and to Avoid Unperfected Security Interest (Adv. Dkt. 12) asking the Court to enter a judgment declaring that the federal tax lien of $2,878,443.11[8] is a first priority lien and security interest in the BP Proceeds pursuant to 26 U.S.C. § 6321.  On April 24, 2020, the Clark Attorneys filed the Answer and Affirmative Defenses to Complaint to Determine Validity, Extent and Priority of Liens and to Avoid Unperfected Security Interest (Adv. Dkt. 13) alleging that the Clark Assignment entitles them to the BP Proceeds and that the BP Proceeds "do not otherwise pass to the Debtor's estate." (Adv. Dkt. 13 ¶ 17).  On April 30, 2020, Clark filed the Answer and Affirmative Defenses of Henry Clark to the Adversary Complaint of the Trustee to Determine Validity, Extent, and Priority of Liens and to Avoid Unperfected Security Interest (Adv. Dkt. 16) denying that the federal tax lien is a first priority lien and further denying that his claim is unsecured.

---

[8] The IRS corrects a $10.00 typographical error in the Complaint by denying that the amount of the IRS POC is $2,878,433.11 rather than $2,878,443.11.  (Adv. Dkt. 12 at 2).

**K.      Amendments to Clark POC in Bankruptcy Case**

Clark filed two (2) amendments to the Clark POC (Bankr. Cl. 10-1, 11-1). On May 11, 2020, Clark filed a proof of claim (the "First Amended Clark POC") (Bankr. Cl. 10-1) indicating that the Clark Attorneys also had filed a proof of claim for this claim. The First Amended Clark POC asserts a claim in the amount of $765,664.11, of which $615,664.11 purportedly is secured by a lien on property based on the Clark Judgment and the Clark Assignment and $150,000.00 of which is unsecured. The next day, Clark filed another proof of claim (the "Second Amended Clark POC") (Adv. Dkt. 57-2 at 26-28; Bankr. Cl. 11-1) amending the original Clark POC by attaching additional documents.

**L.      Motion to Intervene in Adversary Proceeding**

On August 28, 2020, Connor filed a Motion to Intervene (the "Motion to Intervene") (Adv. Dkt. 26) in the Adversary Proceeding. Connor asked the Court for permission to intervene in the Adversary Proceeding to assert a claim against the BP Proceeds. He attached to the Motion to Intervene the Connor Judgment (Adv. Dkt. 26-1) and the Connor Lien Order (Adv. Dkt. 26-2). On October 1, 2020, the Court granted the Motion to Intervene (Adv. Dkt. 31), and Connor filed the Answer to Complaint to Determine Validity, Extent and Priority of Liens and to Avoid Unperfected Security Interest and Intervention (the "Connor Answer") (Adv. Dkt. 33). Connor alleges that he has a judicial lien against the BP Proceeds that "take priority above all other liens asserted in this matter." (Adv. Dkt. 33 at 4-5). Connor attached the Connor Judgment and the Connor Lien Order to the Connor Answer.

**M.      Default Judgment Against Clark Attorneys in Adversary Proceeding**

On October 5, 2020, the Clark Attorneys filed the Notice of Withdrawal (Adv. Dkt. 32) withdrawing the Clark Attorneys Answer. The Trustee, consequently, filed an Application for

Entry of Default (Adv. Dkt. 41) asking the Clerk of the Bankruptcy Court (the "Clerk") for an entry of default against the Clark Attorneys. The Clerk filed an Entry of Default (Adv. Dkt. 43, 44) against the Clark Attorneys. The Trustee filed the Motion for Default Judgment Against Defendants Payson and Berstein [*sic*] (Adv. Dkt. 48). On December 3, 2020, the Court entered the Default Judgment (the "Default Judgment") (Adv. Dkt. 49) allowing the Attorneys POC as a general unsecured claim.

## N.      Amendment to Connor POC in Bankruptcy Case

On October 13, 2020, Connor filed an amended proof of claim (the "Connor Amended POC") (Adv. Dkt. 57-2 at 15-28; Bankr. Cl. 2-2). Like the Connor POC, the Connor Amended POC asserts a claim in the total amount of $2,376,888.44. In the Connor Amended POC, however, Connor asserts that $800,000.00 of this amount is secured and $1,576,888.44 is unsecured. The alleged basis for the $800,000.00 secured claim is the Connor Judgment and a "Judicial Lien." (Adv. Dkt. 57-2 at 15-28; Bankr. Cl. 2-2). Attached to the Connor Amended POC is the Connor Judgment entered in the Connor Litigation on September 23, 2014 and the Connor Lien Order docketed under seal in the Connor Litigation on October 29, 2014. (Adv. Dkt. 57-2 at 15-28; Bankr. Cl. 2-2).

## O.      Motion for Summary Judgment in Adversary Proceeding

On December 31, 2020, the IRS filed the Motion for Summary Judgment asserting that there is no genuine dispute that it holds a first priority lien and security interest in the BP Proceeds pursuant to the Federal Tax Lien Act, 26 U.S.C. §§ 6321-6323. (Adv. Dkt. 51). The IRS maintains that the BP Litigation became property of the bankruptcy estate on the date the Petition was filed and that the BP Proceeds became property of the bankruptcy estate on the date the Trustee and BP settled the BP Litigation. (Adv. Dkt. 52 at 4); *see* 11 U.S.C. § 541(a)(1), (6). The priority of liens,

according to the IRS, is governed by the "first in time, first in right" rule, and a lien comes into existence when it has been "perfected." The IRS contends that the purported judgment liens of Connor and Clark were not perfected prior to the filing of the Notice of Federal Tax Lien because a judgment lien in Mississippi does not attach to intangible property such as the BP Proceeds. (Adv. Dkt. 52 at 7-8). The IRS also asserts that Clark's lien is not perfected because Clark failed to follow the rules of procedure in Illinois, where the Clark Judgment was entered, for perfecting a lien in intangible personal property. (Adv. Dkt. 52 at 8). Alternatively, the IRS argues that even if its federal tax lien and the purported judgment liens of Connor and Clark were perfected simultaneously when the BP Litigation was settled, the federal tax lien takes priority under *United States v. McDermott*, 507 U.S. 447, 449 (1993). (Adv. Dkt. 52 at 9).

In the Joinder, the Trustee adopts by reference the IRS's argument that it holds a first priority lien in the BP Proceeds. She also seeks summary judgment that the BP litigation and the BP Proceeds constitute property of the estate and that the claims of Clark and Connor are unsecured. She points to the narrow scope of the Clark Assignment, which on April 18, 2016, granted Clark and the Clark Attorneys only "a security interest in the 'net proceeds' of the [BP Litigation], but [did] not grant a security interest in the JESCO BP cause of action." (Adv. Dkt. 57 at 8). Accordingly, she argues that the BP Proceeds recovered after the commencement of the Bankruptcy Case on May 11, 2020 "are not subject to the lien resulting from the [Clark] Assignment" by virtue of 11 U.S.C. § 552(a). (Adv. Dkt. 57 at 8). That statute provides that "[p]roperty acquired by the estate or by the debtor after the commencement of the case is not

subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case." *Id*. Thus, she contends that Clark's claim is unsecured.[9]

The Trustee argues that Connor's claim is unsecured because the Connor Lien Order was not made public. Even assuming that the Agreed Judgment had been enrolled and the Connor Lien Order had been redacted and made public, the Trustee argues that the Connor Judgment and Connor Lien Order are "insufficient to create a lien on intangible property such as the [BP Proceeds]" under Mississippi law. (Adv. Dkt. 57 at 10-11).

In the Connor Response, Connor points out that the BP Proceeds did not become part of the bankruptcy estate until well after the bankruptcy filing. (Adv. Dkt. 58 at 2). Connor asserts that the IRS had the opportunity to issue a "Notice of Levy" to recover the amount assessed but did not do so. Because of that lost opportunity, he argues that the "third parties in the BP [Litigation] were not bound to recognize the tax lien and surrender such settlement proceeds to the IRS." (Adv. Dkt. 58 at 3). Connor further asserts that the automatic stay prevented the IRS from perfecting its tax lien since the BP Proceeds constitute "after-acquired funds." Connor contends that the case law cited by the IRS regarding judgment liens does not apply because his lien is not a "general judgment lien, but rather . . . a judgment specifically addressing Connor's lien right with respect to specific assets of the [D]ebtor." (Adv. Dkt. 58 at 3). Connor admits that his lien was "confidential" and "the subject of a sealed order of the court" but insists that it was not inchoate since the Connor Judgment was filed on the public docket and clearly identified the BP Proceeds as the subject of the lien. According to Connor, he holds a lien that takes priority over the federal tax lien under the "first in time, first in right" rule since it predates the filing of the

---

[9] In the event the Court determines that 11 U.S.C. § 552(a) does not apply, the Trustee reserves the right to avoid any security interest created by the Clark Assignment under 11 U.S.C. § 544(a). (Adv. Dkt. 57 at 8 n.3).

Notice of Federal Tax Lien. Finally, he attempts to distinguish *McDermott* based on the type of property involved. (Adv. Dkt. 58 at 4). *McDermott* involved a lien on real property whereas his lien involves personal property. On March 10, 2021, the Trustee filed the Trustee Reply stating her intention to assert a surcharge against the BP Proceeds pursuant to 11 U.S.C. § 506(c) if the Court finds that Connor holds a first priority lien. (Adv. Dkt. 59).

Addressing the arguments raised in the Connor Response, the IRS contends that it was not required to levy on its lien in order to perfect its lien or to maintain priority under 26 U.S.C. § 6323(a). (Adv. Dkt. 61 at 2). Connor's argument in this regard, according to the IRS, confuses the perfection of a lien with the execution on a lien. The IRS next contends that Connor's assertion that he holds a "specific, judicial, and equitable lien" does not mean "that his right trumps all others, or that his right is somehow exempted from the rules of priority and perfection." (Adv. Dkt. 61 at 3). Finally, the IRS reiterates the Trustee's argument that the Connor Lien Order itself required "further action in order for the lien to be valid" and that Connor does not present any evidence that such action was taken to "put other parties on notice." (Adv. Dkt. 61).

## Discussion

Rule 56 of the Federal Rules of Civil Procedure, as made applicable to adversary proceedings by Rule 7056 of the Federal Rules of Bankruptcy Procedure, provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). To prevail on a motion for summary judgment, a party must "cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1)(A). "[I]f the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law" then the Court may grant the motion for summary judgment. *Am. Express Centurion Bank v. Valliani (In re Valliani)*, No. 13-4030, 2014 WL 345700, at *2-3 (Bankr. E.D. Tex. Jan. 30, 2014) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (internal quotations omitted)). "[T]here are two (2) elements that must be met in order for summary judgment to be appropriate: (1) there must be no genuine dispute of the material fact; and (2) the undisputed facts are such that the movant is entitled to judgment as a matter of law." *Greenpoint AG, LLC v. Kent (In re Kent)*, 554 B.R. 131, 139 (Bankr. N.D. Miss. 2016).

The movant carries the initial burden "of informing the . . . court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *See Celotex Corp.*, 477 U.S. at 323. The Court "must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). If the moving party "fails to meet the initial burden, the motion must be denied, regardless of the nonmovant's response." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

If the movant meets the initial burden, "the burden of production shifts to the nonmovant who then must rebut the presumption by coming forward with specific facts, supported by the evidence in the record, upon which a reasonable factfinder could find a genuine fact issue for trial." *Quackenbush v. U.S. Dep't of Educ. (In re Quackenbush)*, No. 16-00044-NPO, 2018 WL 4056993, at *3 (Bankr. S.D. Miss. Aug. 24, 2018) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986)).   Further, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'"   *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008) (quoting *Little*, 37 F.3d at 1075). Summary judgment is proper where "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."   *Celotex Corp.*, 477 U.S. at 323.

The nonmovant's failure to respond to a motion for summary judgment does not entitle the movant to summary judgment by default.   *Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988).   In the absence of opposition to a motion for summary judgment, the Court may consider the movant's facts to be undisputed, but the Court may enter summary judgment in the movant's favor only if those undisputed facts show that the movant has met its initial burden and is entitled to summary judgment as a matter of law.   *Id.*; FED. R. CIV. P. 56(e).

## A.    Property of Bankruptcy Estate

In the Joinder, the Trustee asks the Court to hold that there is no genuine issue of material fact that the BP Litigation and the BP Proceeds are property of the bankruptcy estate.   Although Connor initially denied the allegations in the Complaint that the BP Proceeds are property of the estate in the Connor Answer, he admits that "the $600,000.00 settlement proceeds became an asset of the bankruptcy estate" in the Connor Response.   (Adv. Dkt. 33 ¶ 8; Adv. Dkt. 58 at 2).   Clark did not file a response to the Motion for Summary Judgment, but he denied that the BP Proceeds are property of the estate in the Clark Answer.[10]   (Adv. Dkt. 16 at 2-3).

---

[10] Allegations and conclusions in an unsworn pleading cannot defeat a summary judgment motion.   *Miller v. Peeples*, 456 F. Supp. 38, 43 (N.D. Miss. 1978).

The filing of a bankruptcy petition, creates a bankruptcy estate comprised of all property "wherever located and by whomever held."  11 U.S.C. § 541(a).  Subsection (1) specifies that property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a)(1).  Subsection (6) further provides that "proceeds . . . of or from property of the estate" also become property of the estate.  11 U.S.C. § 541(a)(6); 5 COLLIER ON BANKRUPTCY ¶ 541.01 (16th ed. 2021) ("[I]t is necessary and desirable that the property included in the bankruptcy estate be as inclusive as possible.").  It is well established that the definition of property of the estate includes causes of action belonging to the debtor at the time the bankruptcy case is commenced.  *In re Box*, No. 06-12268-NPO, 2013 WL 5574938 at *4 (Bankr. N.D. Miss. Oct. 10, 2013); *see also Wieburg v. GTE Sw. Inc.*, 272 F.3d 302, 306 (5th Cir. 2001).

The Debtor's interest in the BP Litigation arose prior to the commencement of the Bankruptcy Case.  The Debtor initiated the lawsuit against BP on December 2, 2010 and filed the Petition nearly eight (8) years later on November 5, 2018.  Thus, when the Debtor filed the Petition, its interest in the BP Litigation became property of the estate.  11 U.S.C. § 541(a)(1).  Because the BP Proceeds are proceeds derived from the BP Litigation, they too became property of the estate.  11 U.S.C. § 541(a)(6).  "The fact that the causes of action may have borne fruit in settlement or judgment after commencement of the bankruptcy case does not transform them into post-petition property of the debtor—excluded from the bankruptcy estate—any more than post-petition payments on a pre-petition note owed to the debtor would be excluded from the estate."  *Wischan v. Adler (In re Wischan)*, 77 F.3d 875, 877 (5th Cir. 1996) (holding that upon filing a bankruptcy petition under chapter 7, prepetition causes of action become property of the bankruptcy estate).

The Court, therefore, finds that there is no genuine issue of material fact that the BP Litigation and the BP Proceeds are property of the bankruptcy estate, and the Trustee is entitled to summary judgment as to that finding.  The Court turns next to the status of the competing claims to the BP Proceeds.

**B.      Status of Competing Claims**

The IRS and the Trustee argue that there is no genuine issue of material fact that the IRS holds a first priority lien and security interest in the BP Proceeds.  The Trustee further argues that there is no genuine issue of material fact that Connor and Clark are unsecured creditors in the Bankruptcy Case.  Connor contends that he holds a lien that predates the federal tax lien and, therefore, his lien is entitled to priority.  Clark too asserts a first priority lien in the BP Proceeds. Given the general rule that "the first in time is the first in right," the Court evaluates the status of each claim to the BP Proceeds separately in the order in which the alleged claim arose.

**1.      Connor**

Connor asserts a secured claim in the amount of $800,000.00 and an unsecured claim in the amount of $1,576,888.44 for a total claim of $2,376,888.44.  As the basis for his secured claim, Connor contends that he holds a "judicial and equitable lien" of $800,000.00 in the BP Proceeds as of September 15, 2014 pursuant to the Connor Lien Order.  Connor alleges that the Connor Lien Order is a "specific, judicial and equitable lien as addressed by the U.S. District Court against a specific cause of action and the proceeds which may be recovered from that action."  (Adv. Dkt. 58 at 3).

The creation of liens arising from federal court judgments is governed by 28 U.S.C. § 1962. That statute provides that a federal judgment operates as a lien in the same manner as a judgment of the state court.  *See United States v. Hodes*, 355 F.2d 746, 749 (2d Cir. 1966) ("28 U.S.C. 1962

. . . conforms with the congressional policy that the execution of federal judgments shall be done according to state law."). In Mississippi, a federal judgment entered by a U.S. District Court situated in Mississippi does not become a lien on any property of the defendant until an abstract is filed in the office of the clerk of the circuit court and enrolled on the judgment roll.[11] MISS. CODE ANN. § 11-7-197; *see* MISS. CODE ANN. §§ 11-7-303, 11-7-305. Once enrolled, the federal judgment "becomes a lien upon the property of the defendant within the county where the judgment is enrolled from the date of enrollment and priority is established from that day forward." *Simmons v. Thomas*, 827 F. Supp. 397, 401 (S.D. Miss. 1993) (citing *Herrington v. Heidelberg*, 141 So. 2d 717 (1962)).

Connor did not enroll either the Connor Judgment or the Connor Lien Order against the Debtor with the Clerk of the Circuit Court of Stone County, Mississippi. Connor argues that he was not required to take any steps to create a judgment lien because "[t]his lien, unlike a lien granted by a money judgment, was ordered by the Court and implemented thereby." (Adv. Dkt. 58 at 3).

Connor does not point to any specific language in the Connor Lien Order that excuses him from complying with the recording requirements of state law for the creation and perfection of a

---

[11] Mississippi law provides:

Judgment and decrees . . . rendered in any court of the United States held within this state . . . shall not be a lien upon or bind the property of the defendant within the county in which such judgments or decrees may be rendered until an abstract thereof shall be filed in the office of the clerk of the circuit court of the county and enrolled on the judgment roll . . . . Such judgments and decrees shall bind the property of the defendants from the date of such enrollment, in like manner as judgments and decrees entered in a different county and so enrolled.

MISS. CODE ANN. § 11-7-197.

judgment lien. *See Dean v. City of Shreveport*, 438 F.3d 448, 460 (5th Cir. 2006) (holding that agreed judgments are construed under general principles of contract interpretation). There is language, however, that indicates an understanding that Connor would have to disclose his interest in the BP Proceeds on the public record to prevent it from being subject to the rights of other creditors. For example, the Connor Lien Order granted Connor a judicial lien "for the purpose of submission of a lien against the . . . BP claims and litigation matters" and "authorized and directed [the parties] to file a redacted version of [the Connor Lien] Order for the public record." (Adv. Dkt. 57-2; Bankr. Cl. 2-2). This language contemplates the submission and filing of the Connor Lien Order on the public record and, therefore, contradicts Connor's assertion that it created a self-executing judicial lien. Connor should have acted to protect his interest in the BP Proceeds, but he did nothing.[12]

Connor attempts to explain his failure to act by arguing that the Connor Lien Order did not direct him "by name" to file it on the public record and he was not authorized to take such action unilaterally. Connor is a named plaintiff in the Connor Litigation so the basis for this argument is unclear. It is possible that Connor agreed not to disclose the Connor Lien Order except upon enrollment of the Connor Judgment, which he could not do except in the event of a default. In that regard, any default for nonpayment of the settlement amount would have occurred, if at all, after the filing of the Bankruptcy Case.

The Court finds that the Connor Judgment and Connor Lien Order constitute an agreement, enforceable by the Mississippi District Court, between Connor, the Debtor, and alleged alter egos of the Debtor, that the Debtor owed Connor $2,376,888.44 and that the Debtor would pay

---

[12] The Connor Judgment contemplated that the parties would enter into an assignment, which they did not do and which Connor apparently did not pursue. (Adv. Dkt. 57-2; Bankr. Cl. 2-2).

$800,000.00 of that settlement amount from any proceeds recovered in the BP Litigation. Connor's claim is unsecured since his only superior position to the BP Proceeds is against the defendants in the Connor Litigation. The unsecured status of Connor's claim is a consequence of his own making. Connor agreed not to enroll the Connor Judgment except upon default and not to fully disclose his security interest in the BP Proceeds. The settlement he reached with the Debtor cannot grant him a position superior to the rights of creditors who were not parties to the Connor Litigation.

Even assuming the Connor Judgment had been properly enrolled in Mississippi and that Connor held a perfected judgment lien as of September 15, 2014, his lien would not attach to the Debtor's intangible personal property. *Simmons-Belk, Inc. v. May*, 283 So. 2d 592, 594 (Miss. 1973). "Until service of a writ of garnishment or other appropriate writ subjecting . . . intangible property to the judgment, the lien is inchoate and does not attach." *Id.* This additional requirement under state law must be met to obtain the status of a "judgment lien creditor" entitled to priority over a federal tax lien. *See United States v. Fore*, 339 F.2d 70, 72 (5th Cir. 1964) (holding that the filing and indexing of a Texas judgment in Mississippi entitled creditor to a lien only upon the debtor's real estate and not upon his personal property). A "judgment lien creditor," for purposes of 26 U.S.C. § 6323(a), is defined as "a person who has perfected a lien under the judgment on the property involved. . . . If under local law levy or seizure is necessary before a judgment lien becomes effective against third parties acquiring liens on personal property, then a judgment lien under such local law is not perfected until levy or seizure of the personal property involved." 26 C.F.R. § 301.6323(h)-(1)(g). The recording and enrollment of a federal judgment in Mississippi, therefore, is not sufficient for a creditor to obtain a lien on intangible personal property superior to a federal tax lien.

Finally, the Court notes that Connor does not assert that the Connor Lien Order created a consensual security interest in the BP Proceeds. To the extent the Connor Lien Order may be deemed to create a security interest, Connor was required to comply with Article 9 of the UCC. No UCC financing statement was filed in Delaware to perfect his security interest.[13] DEL. CODE ANN. tit. 6, § 9-310.

Under these undisputed facts, the Court finds that Connor does not have a judgment lien under Mississippi law. Even if he had a perfected judgment lien, Mississippi law would not allow his lien to attach to the intangible personal property such as the BP Proceeds. Moreover, to the extent the Connor Lien Order resembles a security interest, Connor did not perfect his interest in the BP Proceeds under Article 9 of the UCC. The Court, therefore, finds that Connor has an unsecured claim against the Debtor.

## 2.    Clark

Clark asserts a secured claim in the amount of $615,664.11 and an unsecured claim in the amount of $150,000.00. The basis for his claim is the Clark Assignment dated April 18, 2016 and the Clark Judgment entered by the Illinois District Court on May 4, 2016. There is no evidence in the record that Clark enrolled the Clark Judgment in Mississippi. *See In re Lambert*, 179 F.3d 281, 285 (5th Cir. 1999) (generally, intangible personal property is located in the domicile of its owner). Even if Clark had enrolled the Clark Judgment in Mississippi, the enrollment of a judgment by itself is insufficient under Mississippi law to create a lien on intangible personal property.

---

[13] Because the Debtor was organized under the law of Delaware, the Delaware UCC applies. Under the UCC, "[a] registered organization that is organized under the law of a state is located in that state." MISS. CODE ANN. § 75-9-307(e); DEL. CODE ANN. tit. 6, § 9-307(e). "[W]hile a debtor is located in a jurisdiction, the law of that jurisdiction governs perfection the effect of perfection or nonperfection, and the priority of a security interest in collateral." DEL. CODE ANN. tit. 6, § 9-301.

*Simmons-Belk, Inc.,* 283 So. 2d at 594.   There is also no evidence that Clark filed the Clark Judgment in Illinois.   Even if he had, Clark failed to follow the proper method under the Illinois Code of Civil Procedure to perfect a lien in intangible personal property.   *See Rodriguez v. Citibank (In re Nowicki)*, 202 B.R. 729, 737 (Bankr. N.D. Ill. 1996).   The Court, therefore, finds that the Clark Judgment creates a claim against the Debtor but not a judgment lien.

With respect to the Clark Assignment upon which Clark primarily relies, Clark does not describe the transaction as an absolute assignment but as both an assignment and a grant of a security interest.   (Adv. Dkt. 16).   Article 9 applies "to any transaction (regardless of its form) which is intended to create a security interest in personal property. . . including . . . general intangibles." DEL. CODE ANN. tit. 6, § 9-102(a).   Because Article 9 applies, Clark was required to file a financing statement to perfect his security interest in the BP Proceeds.   Here, Clark did not file a UCC financing statement.

Even if Clark had filed a financing statement, the Clark Assignment granted him a security interest only in the "net proceeds" of the BP Litigation and not in the BP Litigation itself.   Unlike the BP Litigation, the BP Proceeds were not in existence when the Bankruptcy Case was commenced.   After-acquired property of the bankruptcy estate generally "is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case."[14]   11 U.S.C. § 552(a).   Any perfected security interest in the BP Proceeds, therefore, is invalid.   *See Philip Morris Cap. Corp. v. Bering Trader, Inc. (In re Bering Trader, Inc.)*, 944 F.2d

---

[14] Section 552(b) contains an exception to this general rule.   If the security agreement grants a lien on prepetition property and the "proceeds, products, offspring, or profits" of such property, then the security interest will continue postpetition in both the prepetition property and the "proceeds, products, offspring, or profits" unless the Court orders otherwise.   11 U.S.C. § 552(b).   The exception is inapplicable here because the Clark Assignment did not grant Clark a security interest in the BP Litigation.

500, 502 (9th Cir. 1991) (noting that 11 U.S.C. § 552(a) "is intended to allow a debtor to gather into the estate as much money as possible to satisfy the claims of all creditors"). In the absence of a judgment lien or a valid perfected security interest in the BP Proceeds, Clark's claim is unsecured.

**3.      IRS**

On February 8, 2016, the IRS assessed the Debtor $1,481,350.00 in corporate income taxes for the tax years 2010 through 2012. On June 13, 2016, the IRS filed the Notice of Federal Tax Lien with the Chancery Clerk of Harrison County, Mississippi and the Mississippi Secretary of State. Connor agrees that the IRS "has shown that it has recorded its tax lien in the property records of Harrison County, Mississippi, and that it has filed notice of the lien with the Mississippi Secretary of State's office" but disagrees that the IRS perfected its lien in the BP Proceeds by doing so. (Adv. Dkt. 58 at 2).

Under the Federal Tax Lien Act, when a person fails to pay a tax after demand, a lien arises in favor of the United States "upon all property and rights to property, whether real or personal, belonging to such person." 26 U.S.C. § 6321. The U.S. Supreme Court has held that "[t]he statutory language 'all property and rights to property,' appearing in [26 U.S.C.] § 6321 . . . is broad and reveals on its face that Congress meant to reach every interest in property that a taxpayer might have." *United States v. Nat'l Bank of Com.*, 472 U.S. 713, 719-20 (1985) (internal citations omitted). The lien against the taxpayer arises automatically upon assessment and continues until the assessed amount is paid or becomes unenforceable due to the lapse of time. 26 U.S.C. § 6322. Although the federal tax lien becomes enforceable against the taxpayer upon assessment, the lien is not valid "against any . . . holder of a security interest . . . or judgment lien creditor" until it is

perfected.  26 U.S.C. § 6323(a).  Thus, a federal tax lien is invalid against a first-in-time security interest holder or a first-in-time judgment lien creditor.

There are different methods of perfecting a tax lien depending on the type of property.  A tax lien on personal property, whether tangible or intangible, is perfected by filing notice of the tax lien in accordance with the laws of the State where the property subject to the lien is deemed situated under 26 U.S.C. § 6323(f)(2)(B).  If the taxpayer is a corporation whose principal place of business is in Mississippi, notice of a federal tax lien upon personal property, whether tangible or intangible, must be filed with the Mississippi Secretary of State.  MISS. CODE ANN. § 85-8-5; *see* 26 U.S.C. § 6323(f)(2)(B).  Once the notice is filed, a federal tax lien attaches to all property or property rights a taxpayer then holds or subsequently acquires.  *Simmons*, 827 F. Supp. at 401.

On June 13, 2016, the IRS filed the Notice of Federal Tax Lien with the Mississippi Secretary of State.  The parties do not dispute that the BP Proceeds constitute intangible personal property or that the Debtor's principal place of business is in Mississippi.  The Court, therefore, finds that the IRS perfected the federal tax lien in all property or property rights the Debtor held or subsequently acquired on June 13, 2016.

Connor argues, without elaboration, that the automatic stay prevented the IRS from perfecting the tax lien on the BP Proceeds.  (Adv. Dkt. 58 at 3).  Connor does not cite any authority in support of his position but his argument appears to rest upon 11 U.S.C. § 362(a)(4), which stays "any act to create, perfect, or enforce any lien against property of the estate."  Connor does not allege that the IRS took any action after the bankruptcy filing to enforce its lien.  Moreover, the BP Proceeds constitute "proceeds" of the BP Litigation to which the federal tax lien attached before the commencement of the Bankruptcy Case.  11 U.S.C. § 541(a)(6).  Connor's argument is conclusory and not fully developed, and the Court declines to address it any further.  *See Gaby's*

*Bags, LLC v. Mercari, Inc.*, No. 20-cv-00734, 2021 WL 857695, at *6 (N.D. Cal. Mar. 8, 2021) ("The Court is supposed to be neutral and rule on arguments presented, not dream up the parties' arguments for them.").

## C.    Priority of Competing Liens

Federal law governs the relative priority of a federal tax lien over competing liens created by state law. *United States v. Pioneer Am. Ins. Co.*, 374 U.S. 84, 88 (1963). "As a general rule, competition for priority between tax liens and other encumbrances is determined on the basis of "first in time, first in right." *Read v. United States*, 169 F.3d 243, 252 (5th Cir. 1999); *see McDermott*, 507 U.S. at 449.

Both Connor and Clark assert that they are judgment lien creditors. In order for their alleged judgment liens to be superior to the federal tax lien, their judgment liens must have been perfected prior to the filing of the Notice of Federal Tax Lien. 26 U.S.C. § 6323(a); 26 C.F.R. § 310.6323(h)-1(g). Here, the issue as to the priority of the competing liens has been made simple by the Court's earlier findings that Connor and Clark failed to obtain and perfect their alleged judgment liens in the manner required by applicable state law. Under 26 U.S.C. § 6323(a), therefore, the federal tax lien prevails over the claims of Connor and Clark even though their judgments against the Debtor predate the filing of the Notice of Federal Tax Lien.

There is an additional obstacle that prevents Connor's alleged judgment lien from attaining priority over the federal tax lien. The U.S. Supreme Court in *McDermott* held that a competing state lien does not come into existence for "first in time" purposes until it has been perfected in the sense that "the identity of the lienor, *the property subject to the lien*, and the amount of the lien are established." *McDermott*, 507 U.S. at 449 (citing *United States v. City of New Britain*, 347 U.S. 81, 84 (1954). Connor's alleged judgment lien, therefore, would not have attached to the BP

Proceeds until the settlement was reached in 2020.  Unlike Connor's alleged judgment lien, the federal tax lien is dated from the time of the filing of the Notice of Federal Tax Lien regardless of when it attached to the BP Proceeds.  *Id.* at 450.  For that reason, Connor's judgment lien would not be "first in time."  The Court rejects Connor's attempt to distinguish *McDermott*.  The holding in *McDermott* addressed the priority of a federal tax lien against a judgment lien on a debtor's after-acquired property without making any meaningful distinction as to the nature of that property.  Connor does not cite any authority that holds otherwise.

Connor argues that the IRS does not have a priority lien because it could have levied or otherwise executed on its lien earlier.  The IRS correctly notes that Connor's argument confuses the perfection of a federal tax lien, 26 U.S.C. § 6323, with its enforcement, 26 U.S.C. § 6331.  (Adv. Dkt. 61 at 3).  To obtain priority, the Government only had to comply with the statutory requirements of 26 U.S.C. § 6323(a) and (f) that notice of the lien be filed before the enrollment of the judgments.  *See S. Rock, Inc. v. B&B Auto Supply*, 711 F.2d 683, 688 (5th Cir. 1983).

To the extent that the Connor Lien Order and Clark Assignment may be construed as security interest agreements, those interests are unperfected in the absence of a properly-filed financing statement.  Article 9 of the UCC provides that "a financing statement must be filed to perfect all security interests."  DEL. CODE ANN. tit. 6, § 9-310.  Even assuming the perfection of Clark's security interest, his lien does not survive the commencement of the Bankruptcy Case under 11 U.S.C. § 552.  Although 11 U.S.C. § 552 provides an exception for liens resulting from prepetition security agreements that cover "proceeds, product, offspring, rents, or profits," the Clark Assignment did not purport to grant Clark a security interest in the BP litigation.

The Court finds that the IRS holds a first priority lien to the BP Proceeds.  Clark and Connor both hold general unsecured claims against the Debtor.  To the extent the Court has not addressed

any of the parties' arguments, it has considered them and determined that they would not alter the result.

## Conclusion

The IRS and the Trustee have shown that there is no genuine dispute that the IRS holds a first priority federal tax lien in the BP Proceeds.  The Trustee has further shown that there is no genuine dispute that the BP Litigation and BP Proceeds are property of the bankruptcy estate and that Connor and Clark hold general unsecured claims against the bankruptcy estate.  The Court, therefore, finds that the Motion for Summary Judgment and Joinder should be granted and that summary judgment should be awarded in favor of the IRS and the Trustee.

Because the claim of the Clark Attorneys was resolved previously by entry of the Default Judgment on December 3, 2020, the Court's award of summary judgment resolves all claims raised in the Complaint.  The Court, therefore, finds that the Adversary Proceeding should be closed.  In accordance with Rule 7058 of the Federal Rules of Bankruptcy Procedure, the Court will enter a final judgment consistent with this Opinion.

##END OF OPINION##